GEHRING & SATRIALE LLC
Joseph E. Gehring, Jr., Esq.
One Gateway Center, Suite 2600
Newark, New Jersey 07102
(973) 854-2600
(973) 854-2609 (fax)
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MORGAN STANLEY SMITH BARNEY LLC,

        Plaintiff,

-against-

JON STANKOVICH,

        Defendant.

Case No. 3:18-cv-7962

## COMPLAINT

1. Plaintiff Morgan Stanley Smith Barney LLC ("Morgan Stanley"), by its undersigned attorneys, brings the following Complaint for injunctive relief against Defendant Jon Stankovich ("Stankovich"), a former Morgan Stanley financial advisor, to enjoin Stankovich from soliciting the Morgan Stanley customers he had serviced while employed by Morgan Stanley and to require him to return all customer information he took with him. Morgan Stanley seeks the injunction pending an expedited arbitration on its application for a permanent injunction in an arbitration before FINRA Dispute Resolution.[1]

### PARTIES

2. Plaintiff Morgan Stanley is a broker-dealer and a member of FINRA. Morgan Stanley is a limited liability company, a citizen of Delaware and New York. Morgan Stanley

---

[1] Upon entry of a temporary restraining order or preliminary injunction, the arbitration automatically becomes expedited pursuant to Rule 13804 of FINRA's Code of Arbitration Procedure, with a hearing scheduled within 15 days of the Court's order. Without a temporary injunctive relief, however, no hearings will be scheduled for months and any award rendered in the arbitration will be rendered ineffectual.

conducts its business in its offices nationwide, including in its office in Red Bank, New Jersey.

3. Defendant Stankovich is a citizen of New Jersey. Stankovich resides in Tinton Falls, New Jersey, and until April 10, 2018, was employed by Morgan Stanley as a financial advisor in its office in Red Bank, New Jersey. According to FINRA's records, he is now employed by Capitol Securities Management, Inc. a few blocks away in Red Bank, New Jersey.

## JURISDICTION AND VENUE

4. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332 as the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs. Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65. Venue is proper in this Court under 28 U.S.C. § 1391 as the complained of conduct arose in this judicial district.

## DEFENDANT'S MISCONDUCT

5. Stankovich became employed by Morgan Stanley in or about August 2004, in Red Bank, New Jersey.

6. In or about 2014, Stankovich partnered with another financial advisor in the Red Bank branch, Paul GaNun. They entered into a Joint Production Memorandum Agreement (the "Joint Production Agreement") in 2014, agreeing, among other things, that they would split credit for revenue generated on the accounts in their joint production number. They followed up with additional agreements over the next several years, changing the percentage splits and updating the list of customers in their joint production number from time to time. (A copy of the Joint Production Agreements electronically signed by Stankovich, with customers' names and account numbers redacted, is attached as Exhibit A.)

7. In each Joint Production Agreement, Stankovich and GaNun agreed as follows:

> Joint Producers executing this Agreement as set forth in Table 1
> below have read and agree to adhere to Morgan Stanley Wealth

> Management ("Morgan Stanley" or the "Firm's") then current Joint Production Arrangement Policy (the "JP Policy"). Each Joint Producer understands and agrees that completion and execution of this Agreement is required by the JP Policy and that the JP Policy may be modified or changed by the Firm from time to time in its sole discretion.

(Exhibit A at 1, 4, 7, 27, and 45).

8. A copy of the Joint Production Policies electronically signed by Stankovich in 2014, 2015, and 2017 is attached as Exhibit B. Each Joint Production Policy contains a non-solicitation and confidentiality provision. (Exhibit B at 3, 7, and 12). The most recent, electronically signed by Stankovich in 2017, provides as follows:

> IV. Non-Solicitation of Joint Production Clients
>
> By signing this JP Policy, each Joint Producer agrees that any provisions contained in their individual Employment Agreements with the Firm, or any of its affiliates, parents, successors or predecessors, and other agreements or policies they have agreed to with the Firm relating to any restrictive covenants, non-disclosure, confidentiality, non-solicitation, damages and/or remedies, if any, are incorporated herein. For purposes of this section IV, Morgan Stanley or the Firm shall include Morgan Stanley Smith Barney LLC, Morgan Stanley & Co. LLC and any affiliates, parents, successors or predecessors.
>
> **In addition, for a period of one (1) year following any Joint Producer's termination of employment for any reason, each departing Joint Producer agrees not to solicit any Client Accounts or retain any information regarding any such Client Accounts, including, but not limited to, a list of Morgan Stanley client names and/or client contact information.** For purposes of this provision, the term "solicit" incudes initiation of any contact with clients for the purpose of conducting business with or transferring accounts to any other person or firm that does business in any line of business in which Morgan Stanley or any of its affiliates is engaged. …

(Exhibit B at 12) (emphasis added).

3

9. Stankovich further agreed to injunctive relief if he violated the non-solicitation or confidentiality provision:

> In the event of a breach of any of the restrictions contained or incorporated herein by reference, each Joint Producer agrees that the Firm will suffer immediate and irreparable harm, that money damages will not be adequate to compensate the Firm, and the Firm will therefore be entitled to appropriate injunctive relief.

(Exhibit B at 3, 7, and 12).

10. GaNun recently reported to Morgan Stanley that he discovered that Stankovich had been diverting commissions from their joint production number to his own production number. Stankovich therefore received 100% of the credit for those commissions rather than splitting the credit pursuant to the split provided for in their joint production agreements. Morgan Stanley's Special Investigations Unit investigated and met with Stankovich, who admitted to diverting over 450 commissions, totaling over $150,000. As a result of this misconduct, Morgan Stanley terminated Stankovich's employment for cause on April 10, 2018. When he was terminated, Stankovich's Complex Manager expressly reminded him of his post-employment restrictions.

11. Stankovich became reemployed by Capitol Securities Management, Inc. the next day and immediately started soliciting customers subject to the Joint Production Agreements to transfer their accounts from Morgan Stanley to his new employer, in violation of the one-year non-solicitation provision in the agreements. Stankovich is undoubtedly using customer information he took with him from Morgan Stanley to solicit these customer, one of whom so far has indicated that he intends to transfer his accounts as a result of Stankovich's solicitation.

## IRREPARABLE HARM

12. As discussed above, Stankovich is using information he had access to in Morgan Stanley's records as a Morgan Stanley employee to benefit himself. Morgan Stanley relies on its

4

employees (such as Stankovich) to develop relationships with its customers and to generate good will, <u>on behalf of Morgan Stanley</u>, and compensates them for doing so.

13. Morgan Stanley's continued success relies on its relationships with its customers. Morgan Stanley – through its employees – has built the loyalty of its customer base through years of efforts and has invested substantially in building Morgan Stanley's goodwill. Morgan Stanley spends substantial resources in terms of time, effort and money annually to provide programs to support its financial advisors (such as Stankovich) for them to use to obtain and build relationships with customers.

14. The records Morgan Stanley maintains its customer information (to which Stankovich had access to as an employee of Morgan Stanley) are not available from other sources and have been created and updated for a period of many years based on Morgan Stanley's relationships with its customers. Morgan Stanley has invested substantial corporate resources to develop and maintain its customer information. The substantial majority of the Morgan Stanley customers that Stankovich serviced were developed at great expense and over many years. Morgan Stanley's customer list is the lifeblood of its business and the expenditures incurred by Morgan Stanley in obtaining its customers include the millions of dollars spent by Morgan Stanley each year on national and local advertising and marketing, the millions of dollars it costs to train Morgan Stanley's employees, and the many other expenditures Morgan Stanley incurs in maintaining its goodwill in the industry.

15. Morgan Stanley has also expended significant resources to service its customers. These resources include millions of dollars a year it spends for sales support staff, clearing services, operations personnel, systems and support, management and compliance supervision, salaries, annual registration fees, computer services and equipment, phone, mail, research, literature, seminars, trade and other professional news publications, promotional events,

securities research and analysis, and other services.

16.     The customer information that Stankovich has misappropriated and is now using was entrusted to Morgan Stanley by its customers with the expectation that it would remain confidential and would not be disclosed to third parties. Morgan Stanley is legally obligated to protect this information and Stankovich had access to it solely as an employee of Morgan Stanley. Morgan Stanley took numerous steps to protect the confidentiality of this information and Stankovich was responsible for complying with Morgan Stanley's internal policies regarding confidentiality. Morgan Stanley has implemented numerous other policies and has established tight security to ensure the confidentiality of its customer information, limiting access to its computer systems to those with authorized password-protected access, and limits the use of its customer information to certain employees who need access to it.

17.     Further, the customers at issue were jointly serviced with another financial advisor, GaNun, from whom Stankovich had been diverting commissions for several years before he was terminated. Stankovich expressly agreed as a condition of being partnered with GaNun that he would not solicit any of the customers jointly serviced with GaNun.

18.     Unless Stankovich is enjoined from using the customer information he misappropriated and from soliciting Morgan Stanley's customers, the threat of irreparable harm is beyond doubt. Stankovich's solicitation of Morgan Stanley's customers will destroy the benefits of the resources Morgan Stanley has invested over many years to develop these relationships and goodwill. No price tag can be placed on the destruction of the benefits Morgan Stanley has accrued from such efforts and Morgan Stanley now faces losses that cannot be calculated.

19.     A Temporary Restraining Order and Preliminary Injunction are therefore necessary to maintain the status quo in this proceeding and to prevent further irreparable harm to

Morgan Stanley.

## MORGAN STANLEY'S CAUSES OF ACTION

20. Morgan Stanley repeats and realleges each of the foregoing paragraphs as if fully set forth herein.

21. The foregoing conduct constitutes: (1) breach of contract; (2) breach of fiduciary duty; (3) unfair competition; (4) tortious interference with contract; (5) misappropriation; and (6) violation of the New Jersey Trade Secrets Act.

22. As a consequence of the foregoing, Morgan Stanley faces irreparable harm and loss. There is every reason to believe that unless Defendant is enjoined, he will continue such unlawful conduct.

## PRAYER FOR RELIEF

WHEREFORE, Morgan Stanley respectfully requests that a Temporary Restraining Order and/or a Preliminary Injunction issue providing as follows:

(1) directing Stankovich, along with his agents, employees and representatives, and all those in active concert or participation with him and/or his agents, employees and representatives, to turn over to Morgan Stanley within 24 hours any and all documents and computerized materials removed at any time from Morgan Stanley, including without limitation all copies and/or extracts thereof and any email messages Stankovich sent to customers using email addresses he had in his possession as a result of his being employed by Morgan Stanley (the "Confidential Information") and further directing him not to retain any copies thereof, and to permanently remove any and all such information (including data contained on computer software, computer hard drives and/or personal digital

assistants) from his possession and custody (provided that Stankovich's attorneys may retain a copy of any such information for litigation purposes only);

(2)   directing Stankovich to have his personal electronic devices, including mobile telephones, tablets and personal computers, imaged by a third-party vendor in order to preserve the contents thereof;

(3)   directing Stankovich, along with his agents, employees and representatives, and all those in active concert or participation with him and/or his agents, employees and representatives from (a) using the Confidential Information in any way, including to solicit Morgan Stanley customers, (b) disclosing the Confidential Information to anyone other than his attorneys, and (c) soliciting or attempting to solicit, directly or indirectly, any customer Stankovich serviced pursuant to the Joint Production Agreements; and

(4)   for such other and further relief as the Court may deem just and proper.

WHEREFORE, by virtue of the foregoing acts complained of, Morgan Stanley demands judgment in its favor and against Stankovich for injunctive relief pending the arbitration to be held in accordance with Rule 13804 of FINRA's Code of Arbitration Procedure.

        Respectfully submitted,

          s/ Joseph E. Gehring, Jr.
        Joseph E. Gehring, Jr., Esq.
        GEHRING & SATRIALE LLC
        One Gateway Center, Suite 2600
        Newark, New Jersey 07102
        (973) 854-2600
        (973) 864-2609 (fax)
        Counsel for Plaintiff

Dated:  April 17, 2018

## CERTIFICATION

      Pursuant to Local Civil Rule 11.2 of the United States District Court for the District of New Jersey, I hereby certify that the matter in controversy is not the subject of any other pending or contemplated court action or arbitration proceeding and know of no additional parties who should be joined in this action, other than the anticipated FINRA arbitration described in the foregoing Complaint.

                                        Respectfully submitted,

                                        _s/ Joseph E. Gehring, Jr._
                                        Joseph E. Gehring, Jr., Esq.
                                        GEHRING & SATRIALE LLC
                                        One Gateway Center, Suite 2600
                                        Newark, New Jersey 07102
                                        (973) 854-2600
                                        (973) 864-2609 (fax)
                                        Counsel for Plaintiff

Dated:  April 17, 2018